E-FILED
Thursday, 12 August, 2021  08:28:58 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| WILLIE FLOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-3250 |
| | ) | |
| CITY OF SPRINGFIELD, | ) | |
| Springfield Police Officers | ) | |
| RENFRO, #719 and | ) | |
| T. DAVIS, #527, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, United States District Judge:

Defendants move for Summary Judgment.

Plaintiff Willie Flowers filed a four-count complaint

against the Defendants.

In Count I, Flowers asserts an excessive force claim under 42 U.S.C. § 1983 against Defendants City of Springfield, Officer Nicholas Renfro and Officer Terrance Davis.

In Count II, Flowers asserts a state law claim for battery against Renfro and Davis.

Count III is a respondeat superior claim wherein Flowers alleges the City is liable for the officers' actions.

Count IV is an indemnification claim against the City pursuant to 745 ILCS 10/9-102.

## I.    FACTUAL BACKGROUND

On May 6, 2018, and at all relevant times related to this incident, Renfro and Davis were off-duty police officers hired by Dirty South, a late-night bar in

Springfield, Illinois, for security purposes. Renfro and Davis were acting under color of law as Springfield Police Department peace officers. Dirty South is located in a high-crime area of Springfield.

The Defendants allege that during the early morning hours of May 6, 2018, Flowers was involved in an altercation with several individuals inside Dirty South. Flowers disputes the assertion he was involved in a physical altercation with others at the bar. He claims he was upset that individuals had grabbed his girlfriend and was trying to explain the situation to bouncers. Following the incident, the owner of Dirty South informed Flowers he needed to leave the bar.

The Defendants claim that, subsequently, a bouncer and another individual informed Flowers again that he needed to leave the establishment.  Flowers continually questioned why he had to leave and would not physically leave the establishment.  Flowers disputes that assertion and claims that when he was told to leave, he began to leave.

Davis later became involved and again told Flowers that he needed to leave.  The Defendants allege Flowers continued to question why he had to leave and did not immediately do so.  Davis informed Flowers a second time he had to leave.  Flowers disputes the assertion that he did not comply with the request to leave and stated that he did not want any problems.

Once Flowers was outside, Defendants allege he continued to argue with Davis regarding why he had to leave and why he was being kicked out. Flowers disputes the assertion that he argued with Davis. He claims he was waiting outside for his girlfriend.

The Defendants allege that, outside the bar, when Davis told Flowers he was under arrest, Flowers turned around to face Davis "man to man," "face to face," within one to two feet of Davis. Flowers disputes this assertion, claiming he did not turn as he was already facing Davis. Renfro witnessed this and in order to ensure Davis's safety and to effectuate the arrest, Renfro then, without warning, wrapped his arms around Flowers and slammed him to the

ground.  Davis subsequently arrested Flowers by placing him in handcuffs.

Renfro did not say anything to Flowers before he took him to the ground.  Flowers did not put up any resistance to Renfro.  Flowers's face hit the ground first.  The force of the impact knocked Flowers's tooth out.

Slamming someone to the ground and causing their head to hit is considered a "strike."  Renfro testified he could have used another technique that did not involve a "strike."  Davis grabbed Flowers's wrist when he was already on the ground.  Flowers was not resisting the handcuffs.

Renfro testified he was not aware as to whether Flowers clinched his fist or was in a fighting stance.  He

further stated that he feared for Davis's safety when Flowers turned toward Davis. Flowers never took a swing at any officer and did not make any overt verbal threats.

The Defendants move for summary judgment, claiming that the undisputed facts viewed in a light most favorable to Flowers, establish that Defendants did not violate his civil rights. The Defendants further assert the officers are entitled to qualified immunity and immunity under the Tort Immunity Act. Flowers asserts factual disputes preclude the entry of summary judgment in favor of Renfro and Davis on Flowers's claim of excessive force. Moreover, Renfro and Davis are not entitled to qualified immunity or immunity under the Illinois Tort Immunity Act.

## II. DISCUSSION

<u>Legal standard</u>

Summary judgment is appropriate if the motion is properly supported and  "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The Court views the evidence and construes all reasonable inferences in favor of the non-movant.  *See Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019).  To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture."  *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).

"The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Driveline Systems*, 36 F.3d at 579 (internal quotation marks omitted). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Excessive force

Flowers alleges the two officers used excessive force when Renfro grabbed and slammed him to the ground and when Davis grabbed Flowers while he was already on the ground. The inquiry under the Fourth Amendment is whether the officers acted "objectively reasonably" based

on the particular facts and circumstances.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989).  Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id*. at 396.

The Defendants claim the force used was objectively reasonable because Flowers had to be told numerous times to leave the establishment.  He remained inside until he was escorted out.   Flowers stated he could not leave immediately because he was holding his girlfriend's drink and he could not take it outside.  The parties agree Flowers was outside of the Dirty South when Renfro wrapped his arms around Flowers and took him to the ground.   The

parties dispute what happened immediately before Flowers was taken to the ground. The Defendants claim Flowers had turned and was arguing within one or two feet of Davis, "face to face" and "man to man" after being told he was under arrest. Flowers disputes the Defendants' account, stating that he did not turn and was already facing Davis. Flowers claims he did not fight, resist or make threats.

Upon viewing the facts in a light most favorable to the non-movant, Flowers, the Court concludes there is a genuine issue of material fact as to whether Renfro's use of force was objectively reasonable. If the Plaintiff's version of the incident is credited, the fact that Flowers was standing man-to-man within one to two feet of Davis was not threatening or an act of aggression. Trespassing is not

a particularly serious crime.  Flowers was later charged with a more serious crime, resisting and obstructing arrest, but all charges were eventually dropped.  Flowers was no longer in the establishment at the time of the incident. While he may have been arguing, Flowers did not resist arrest.  Although Renfro testified he took Flowers to the ground to ensure Davis's safety, a jury could find that the amount of force was objectively unreasonable based on all of the facts and circumstances.  Accordingly, the Court will deny the motion for summary judgment on the excessive force claim as to Renfro.

Flowers also claims that Davis used excessive force by grabbing him when he was already on the ground.  Flowers claims that Davis pulled his arms behind him to be placed

in handcuffs when Flowers was compliant and not resisting arrest.  The Court is unable to conclude that this was a constitutional violation. It is not unusual during an arrest for an officer to grab an individual's wrists, pull his arms behind him and place them in handcuffs.   Absent something more, that does not constitute excessive force.

The Court will grant summary judgment in favor of Davis on the excessive force claim.

## Qualified immunity

### (A)

"The doctrine of qualified immunity balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and affording members of the public the ability to vindicate

constitutional violations by government officials who abuse their offices on the other." *Lopez v. Sheriff of Cook County*, 993 F.3d 981, 987 (7th Cir. 2021) (internal quotation marks omitted). In determining whether an officer is entitled to qualified immunity, courts consider whether the officer's "conduct violated a constitutional right and, if so, whether that right was clearly established at the time of the alleged violation." *Id*.

Courts should look at past cases with specificity in determining whether an officer violated clearly established law. *See id*. at 988. "The Supreme Court has time and again instructed lower courts not to define clearly established law at a high level of generality." *Id*. While a case with identical factual circumstances is not required,

the right must be "so clearly established that it is sufficiently clear that every reasonable official would have understood what he is doing violates that right."  *Id*. (internal quotation marks omitted).

While it has long been established that police officers may not use excessive force, that principle does not tell officers what kinds of force, in what situations, are excessive.  *See Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019).  "*Emmons* illustrates the point by holding, first, that 'do not use unreasonable force' does not establish any concrete rule 'clearly' and, second, that an officer is entitled to immunity for a takedown that enables the officer to control a suspect during an arrest."  *Id*.  Damages may

only be awarded if applicable law "places the invalidity of a particular action beyond debate." *Id*.

The court in *Johnson* noted that other courts have held "there is no clearly established rule forbidding a clean takedown to end mild resistance." *See id*. "Any takedown can go awry—some suspects fall clumsily, while others have fragile bones—but, if the officers use steps reasonably likely to effect a clean takedown, an injury does not lead to liability." *Id*. A court must make an objective inquiry, determining whether the force used was reasonable, not whether things turned out badly. *See id*.

The Defendants claim Renfro is entitled to qualified immunity because he used a clean takedown to end Flowers's mild resistance and to effectuate an arrest.

However, Flowers disputes there was any resistance. He had complied with the order to leave Dirty South. Flowers also disputes that Renfro employed a "clean takedown," alleging that Renfro is a mixed martial arts fighter who knew how to take a person down so that their head struck the ground. Because of these genuine issues of material fact pertaining to whether Flowers resisted and concerning the nature of the takedown, Renfro is not entitled to qualified immunity on Plaintiff's excessive force claim.

(B)

The Court previously found Defendant Davis was entitled to summary judgment on Plaintiff's excessive force claim. Even if Flowers could assert an excessive force claim, however, Davis would be entitled to qualified

immunity.   Flowers alleges Davis grabbed him and handcuffed him after Flowers had complied with the order to leave Dirty South, was already on the ground and not resisting.  Flowers asserts there was no reason for Davis to handcuff and arrest him at that point.

In *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003), the Seventh Circuit held "it was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officers or others, and were suspected of committing only minor crimes." *Id*. at 780.  In *Payne*, the court credited the plaintiff's allegations that two police officers struggled over her arm for thirty minutes while arguing about who

would handcuff her, jerked her arm behind her back, slammed handcuffs onto her wrist, tightened them so tight that she experienced pain and numbness in her hands, and did not loosen them when she complained. *See id*. at 774-75. The allegations in this case relating to Davis handcuffing Flowers are not nearly as egregious as the allegations in *Payne*.

In *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), the Seventh Circuit noted that, under certain circumstances, excessively tight handcuffs might constitute excessive force. *See id*. at 666 (citing *Payne*, 337 F.3d 767). The court in *Tibbs* found the officer's actions objectively reasonable when the plaintiff complained "once about his handcuffs without elaborating on any

injury, numbness, or degree of pain." *Id*. "Thus, *Tibbs* establishes that, absent any indication an officer is aware the handcuff tightness or positioning is causing unnecessary pain or injury, the officer acts reasonably in not modifying the handcuffs." *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020). "[T]he key fact is that the officer must *know* the handcuffs will cause unnecessary pain or injury." *Id*. There is no allegation that Davis was aware that Flowers experienced any discomfort or pain resulting from the handcuffs. Accordingly, Davis is entitled to qualified immunity assuming Flowers has asserted a Fourth Amendment violation. Summary judgment will be entered on the excessive force claim in favor of Davis.

<u>Illinois Tort Immunity Act</u>

The Defendant Officers next claim they are entitled to immunity under the Illinois Tort Immunity Act, 745 ILCS 10/1-101 *et seq*., on the basis that their actions were lawful. They assert immunity relating to the state law claims Flowers brings against Defendants, including the state law claim for battery (Count II), the state law *respondeat superior* claim alleging the City is liable (Count III), and an indemnification claim against the City under 725 ILCS 10/9-102 (Count IV).  "[T]he Illinois Tort Immunity Act bars a public entity from liability for the conduct of its employees when the employees are not liable."  *Shachter v. City of Chicago*, 848 F. App'x 208, 209 (7th Cir. 2021) (citing 745 ILCS 10/2-109).  "A local public entity is not liable for an injury resulting from an act or omission of its

employees where the employee is not liable."  745 ILCS 10/2-109.

The Court has determined there is a genuine issue of material fact as to the Plaintiff's excessive force claim asserted against Officer Renfro.  Because there is a factual dispute regarding Renfro's liability, the Court will deny the City's motion for summary judgment under the Illinois Tort Immunity Act to the extent that the City seeks immunity for Renfro's alleged actions.

The Court has determined that Officer Davis is entitled to summary judgment on the Plaintiff's excessive force claim against Davis.  Accordingly, the Court will grant the City's motion for summary judgment under the Illinois

Tort Immunity Act to the extent that the City seeks immunity for Davis's alleged actions.

<u>Ergo</u>, the Motion of Defendant City of Springfield, Officer Nicholas Renfro and Officer Terrance Davis for Summary Judgment [d/e 25] is GRANTED in part and DENIED in part.

The motion is GRANTED as to the claims asserted against Davis.

The motion is DENIED as to the claims asserted against Renfro.

The City of Springfield's motion is GRANTED as to the state law claims which are based on Davis's alleged conduct.

The City of Springfield's motion is DENIED as to the state law claims which are based on Renfro's alleged conduct.

The Clerk will terminate Officer T. Davis, #527, as a Defendant.

ENTER: August 10, 2021

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge